IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jackie Logan, | ) |
| Plaintiff, | ) Civil Action No. 6:09-744-HMH-WMC |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| HUD; Greenville Housing Authority; Jim Chaplin, Marilyn Parmley; and Michael J. Raymond, | ) |
| Defendants. | ) |

This matter is before the court on the motion for summary judgment of defendants the United States Department of Housing and Urban Development ("HUD") and employees Jim Chaplin and Mary Parmley ("federal defendants") and the motion to dismiss of defendants Greenville Housing Authority ("GHA") and Michael Raymond, GHA's Executive Director. The plaintiff, who is proceeding *pro se*, alleges that the defendants discriminated against him because of his sex by denying him housing at Chamlee Court, one of GHA's facilities in violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

On November 17, 2009, the federal defendants filed a motion to dismiss for lack of jurisdiction. On November 18, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. The plaintiff filed his opposition on December 11, 2009. On February 3, 2010, the GHA and Mr. Raymond filed a motion for summary judgment. On February 4, 2010, another *Roseboro* order was issued. On

March 4, 2010, the plaintiff filed his opposition to the defendants' motion for summary judgment.

**FACTS PRESENTED**

GHA is a governmental entity created by the Housing Authorities Law of the State of South Carolina. *See* S.C. Code Ann. §§ 31-3-10, *et seq*. On June 28, 2001, the plaintiff filled out an application for a one bedroom conventional housing unit with GHA. At that time, the plaintiff listed his address as the Rescue Mission in Greenville. The plaintiff was placed on a waiting list which was prioritized pursuant to federally established preferences. On April 8, 2003, a letter was sent to the plaintiff at the Greenville Rescue Mission requesting that he come in to GHA no later than April 16, 2003, to update his application information. On April 21, 2003, the letter was returned to GHA with a postal service stamp indicating "Attempted Not Known." No other address or contact information for the plaintiff was known to GHA. Cynthia Gwinn aff. ¶¶ 1-2.

Sometime thereafter, GHA obtained a new address for the plaintiff. In early 2007, GHA was in the process of changing its housing application procedures. Instead of having one leasing agent who was responsible for taking applications and placing applicants at all of GHA's properties, each property would now take its own housing applications. Applicants from that point forward would have to choose which property they wished to apply for and then complete an application at that property. Each individual property would then prioritize its waiting list and contact successful applicants. Applicants could apply at as many properties as they wished. *Id*. ¶ 3.

As part of this process to revise its procedures, GHA made an effort to contact those persons who had previously filled out applications for housing units. In that regard, on January 31, 2007, GHA sent a letter to the plaintiff at his new address requesting that he come to GHA no later than February 12, 2007, to update his information in order to remain on the active list for residency. On February 13, 2007, the plaintiff completed the

Personal Declaration Form and provided GHA with the required documents. At that time, the plaintiff filled out only an application for a one-bedroom unit at GHA's Chamlee Court. The plaintiff never filled out an application for any other GHA housing complex. As with other applicants, the plaintiff was placed on a waiting list which was prioritized pursuant to federally established preferences. From February 13, 2007 until the present date, only two one-bedroom units have been leased at Chamlee Court. One was leased to a male applicant and one was leased to a female applicant. Both applicants had a higher priority than the plaintiff. *Id.* ¶¶ 4-6.

The plaintiff claims that in 2008 he was told to go to the Chamlee Court Apartments to speak with Lois Bishop, the manager of the apartments. He claims she had no record of his application and she would try to find it and get back to him, but she never did. Comp. at 4.

The plaintiff sent Jim Chaplin, HUD's field office manager, a letter on March 11, 2009, stating he was concerned because he had completed an application in 2001 and had not heard from the GHA. Mr. Chaplin wrote the plaintiff back on March 18, 2009. HUD m. to dismiss, ex. 1. According to Mr. Chaplin's letter, he contacted the GHA and spoke with Executive Assistant Cindy Gwinn. Ms. Gwinn stated that, while the plaintiff had completed an application for assistance on June 28, 2001, for Chamlee Court, there were no vacancies there at the time. *Id.* Mr. Chaplin told the plaintiff that the GHA was accepting applications at Scott Towers and Garden Apartments. *Id.*

The plaintiff was advised in writing and verbally by GHA employees of other housing units where he could apply for a one-bedroom apartment. Specifically, on March 17, 2009, Mr. Raymond sent the plaintiff a letter explaining GHA's application process as well as other housing options which were available to the plaintiff. He encouraged the plaintiff to fill out an application for Scott Towers or Garden Apartments, as "in most cases the wait is minimal" for those sites. GHA m. to dismiss, ex. 6. In

3

addition, Ms. Gwinn, GHA Executive Assistant, verbally informed the plaintiff of his option to fill out a housing application at Scott Towers and Garden Apartments. The plaintiff did not fill out any additional applications for housing units after he received this information. Gwinn aff. ¶ 7.

The plaintiff filed the instant lawsuit on March 24, 2009, alleging the defendants discriminated against him because of his sex. In his claim for relief, the plaintiff requests "suitable housing like anyone else other than a senior building." He also seeks one million dollars in damages. Comp. at 5.

***Motion to Dismiss***

The federal defendants have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (5). HUD is the agency of the government of the United States of America which, pursuant to the U.S. Housing Act of 1937, provides annual contributions (operating subsidies) required to help local public housing agencies ("PHAs") maintain and operate their low-income housing projects. 42 U.S.C. § 1437g. Annual contributions under § 1437g are authorized only for projects developed pursuant to annual contributions contracts authorized by § 1437c. *Id.* § 1437c(a)(2). The declared policy of the United States is "to vest in local public housing agencies that perform well, the maximum amount of responsibility and flexibility in program administration." 42 U.S.C. § 1437(1)(c).

The GHA is an independent public corporation created by the Housing Authorities Law of the State of South Carolina. *See* S.C. Code Ann. §§ 31-3-10 *et seq.* HUD does, however, prescribe certain requirements in connection with how funds provided by HUD are expended by PHAs. For example, HUD's regulations with respect to the development of public housing are codified at Part 941 of Title 24 of the Code of Federal Regulations ("CFR"). As a part of the process of developing public housing, HUD enters into annual contributions contracts ("ACCs") with PHAs that administer the program. 24

4

C.F.R. § 941.302. Through these ACCs, "HUD agrees to provide financial assistance and the PHA agrees to comply with HUD requirements for the development and operation of a public housing project." *Id.* § 941.103.

In accordance with this regulation, the GHA and HUD have entered into such an ACC pursuant to which the GHA administers the GHA's low-income public housing program. However, consistent with the policy objective declared in 42 U.S.C. § 1437, HUD's role in the administration of the GHA's public housing program is very limited.

The federal defendants argue that the plaintiff's complaint fails to allege valid grounds for subject matter jurisdiction against them. The United States, as sovereign, is immune from suit unless it has consented to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Further, "the terms of the government's consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* Waivers of sovereign immunity are to be strictly construed in favor of the sovereign. *United States Department of Energy v. Ohio*, 503 U.S. 607, 607 (1992). Moreover, "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The Fair Housing Act does not contain any waiver of sovereign immunity let alone the clear, unequivocal waiver required for the plaintiff to bring this action against HUD. *See Gregory v. South Carolina Dept. of Trans.*, 289 F.Supp.2d 721, 726 (D.S.C. 2003) (finding that the language of the Fair Housing Act "is ambiguous at best," and thus "sovereign immunity is still intact for HUD in this context"). This court, therefore, lacks subject matter jurisdiction over allegations against the federal defendants.

Further, the federal defendants argue that the plaintiff cannot look to the Administrative Procedures Act ("APA") for a waiver of sovereign immunity. Although the APA is a limited waiver of sovereign immunity, the APA permits judicial review of agency action only under certain circumstances. 5 U.S.C.§§ 702, 706. To the extent the plaintiff

5

believes he may have a cause of action against the federal defendants pursuant to the APA, 5 U.S.C. §§ 701 -706, no facts have been alleged to support such a cause of action. The APA provides for judicial review of agency action "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C.A. § 701(a). Further, only "final agency action for which there is no other adequate remedy in a court" is subject to judicial review. *Id.* § 704.

To the extent the plaintiff's claim can be construed as a request for APA review against the federal defendants, such a claim would be barred for at least two reasons. First, the plaintiff has an adequate remedy against the non-federal defendants named in the complaint. Pursuant to 5 U.S.C. § 704, a plaintiff may not sue an agency which has authority to enforce compliance with certain standards by a private entity, if those standards "are effectively subject to enforcement by means of private suits brought directly against" other parties. *Gillis v. U.S. Dep't of Health and Human Services*, 759 F.2d 565, 577 (6th Cir. 1985). Here, this test is met. The plaintiff's claim arises directly from the allegedly improper conduct of the non-federal defendant GHA in not providing him with his desired housing choice. Any finding by this court related to the non-federal defendants would not involve HUD or its employees. Further, the court can order prospective relief such as requiring the GHA to provide him with his preferred housing. Therefore, the plaintiff has a remedy he can pursue and is pursuing in this very lawsuit against a non-federal defendant for full relief. Accordingly, the APA does not apply to waive federal defendants' sovereign immunity.

Second, even if the plaintiff identifies the letter from Mr. Chaplin as a final decision or "final agency action" reviewable under the APA, there is no evidence that Mr. Chaplin acted arbitrarily or capriciously. *See* 5 U.S.C. § 706(2). On the contrary, he immediately contacted the GHA to ascertain the basis for the plaintiff's grievance and was provided with a reasonable explanation for the particular denial of housing at Chamlee

6

Court. He communicated this promptly to the plaintiff and offered him alternative housing project locations, pursuant to information received from the GHA. As such, HUD's actions cannot be viewed as arbitrary or capricious.

The federal defendants further argue that the complaint should be dismissed because the plaintiff has failed to return proof of service as to the individual federal defendants Parmley and Chaplin or the Attorney General of the United States. Federal Rule of Civil Procedure Rule 4(i) sets forth certain service requirements when suing the United States and its agencies, officers, or employees. Under this rule, proof of service is required upon the Attorney General of the United States, the United States Attorney for the District, the agency, and officer or employee. See Fed. R. Civ. P. 4(i)((1)-(3).

The plaintiff has filed proof of service in this case only upon the non-federal defendants. The United States Attorney admits that he has been served with this suit. However, a review of the docket fails to show proof that the Attorney General or the individual employees were served. Accordingly, in the alternative, the federal defendants should be dismissed for insufficiency of service of process pursuant to Federal Rule of Civil Procedure 12(b)(5).

Based upon the foregoing, the federal defendants' motion to dismiss should be granted.

*Motion for Summary Judgment*

Defendants GHA and Mr. Raymond have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Rule 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1)there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the non movant and in favor of the non moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. At 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's positions is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the

8

> mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at trial on the merits.

The FHA has a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A). Since the plaintiff filed this action on March 23, 2009, only alleged discriminatory conduct by the defendants that occurred after March 23, 2007, can be included in this action. In the present action, the plaintiff can produce no evidence that he was denied a housing unit due to his sex. The evidence establishes that although the plaintiff had the option of applying for housing at other GHA facilities, he filled out an application only at Chamlee Court on or about February 13, 2007. Since that date, only two one-bedroom housing units have been leased at this facility. One was leased to a male applicant and one was leased to a female applicant. Both applicants had a higher priority than the plaintiff pursuant to GHA and federal guidelines. While the plaintiff may not be satisfied that he has not yet received a housing unit at Chamlee Court, he has presented no evidence of sex discrimination. Accordingly, the motion for summary judgment should be granted.

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion to dismiss (doc. 57) and motion for summary judgment (doc. 66) be granted.

May 21, 2010  s/William M. Catoe
Greenville, South Carolina  United States Magistrate Judge

9